IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO.  JKB-23-0056 |
| | : |
| BRANDON CLINT RUSSELL, | : |
| Defendant. | : |
| | : |
| | : |

...oOo...

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO AFFIRM OR DENY SURVEILLANCE UNDER THE FORESIGN INTELLIGENCE SURVEILLANCE ACT, TO DISCLOSE ALL OF HIS COMMUNICATIONS SUBJECT TO THAT SURVEILLANCE, AND TO UNSEAL THE GOVERNMENT'S EX PARTE SUBMISSIONS AND THE COURT'S EX PARTE REPORT**

The United States of America, by its undersigned attorneys, hereby opposes the defendant's Motion to Compel the Government to Affirm or Deny Surveillance Under the Foreign Intelligence Surveillance Act, to Disclose All of His Communications Subject to That Surveillance, and to Unseal the Government's Ex Parte Submissions and the Court's Ex Parte Report (hereinafter "Motion to Compel") and states as follows.

**INTRODUCTION**

On June 27, 2024, this Court conducted a hearing on the defendant's Motion to Compel the Government to Provide Notice of its Intent to Use or Disclose Information Obtained or Derived from Surveillance Conducted Pursuant to § 702 of the Foreign Intelligence Surveillance Act (ECF 107), along with other pretrial motions. During the hearing, the Court recognized that the threshold factual issue underlying the defendant's motion was whether any such surveillance had been used in connection with

1

this 

this case. The Court further noted that the answer to that question, which is classified, could render moot the defendant's various constitutional and other challenges to Section 702. The Court then suggested, and the parties both agreed, that it would be appropriate for government counsel to provide the Court, *ex parte* and *in camera*, the classified answer to that question. *See* Transcript of Motions Hearing, attached as Exhibit 1, at 65-70.

The Court memorialized that agreement in its Memorandum Opinion, dated July 2, 2024, in which it also denied the defendant's Motion to Compel without prejudice. ECF 134. The Court stated that *depending on the outcome of that ex parte review hearing*, it might reconsider the defendant's Motion to Compel and that the defendant would be permitted to raise the issues presented in his Motion to Compel "again in an *appropriate Motion to Suppress*." *Id.* at 12 (emphasis added).

On July 23, 2024, the Court conducted the *ex parte* and *in camera* conference with government counsel in a sensitive compartmented information facility ("SCIF") in the courthouse. During that conference, the government provided in writing the classified answer to the threshold question as to whether § 702 surveillance was used in the investigation or prosecution of this case.

On August 7, 2024, the Court issued a Memorandum, finding that the defendant was not entitled to notice under 50 U.S.C. § 1806(c). ECF 143. The Court expressly found that "the Government will not introduce or otherwise use at trial or any other proceeding in this case any evidence obtained or derived from an electronic surveillance of Defendant pursuant to FISA Section 702 [and] ... that there is no basis on which to believe or suspect that the rights of Defendant have been violated in any way with respect to any government activities authorized by FISA. *Id*. at 3.

The defendant has now filed a <u>second</u> Motion to Compel -- not an "appropriate Motion to Suppress" – demanding again that the government provide notice as to whether it used § 702 surveillance

in connection with this case and seeking access to the *ex parte* conference information, in spite of his prior agreement to the Court's proposed procedures for reviewing and handling the government's classified submission. ECF 146. The defendant has offered no explanation or reason as to why he should be permitted to re-litigate these issues. This Court issued a memorandum decision after conducting the agreed *ex parte* process. The Court expressly found that the government need not provide any such notice pursuant to 50 U.S.C. § 1806(c) and that none of the defendant's rights have been violated in any way. Nothing has changed, factually or legally, since the issuance of that decision. The fact that the defendant may not like the result is not a basis upon which he should be permitted to have a "second bite at the apple" by filing another Motion to Compel. The defendant's motion should be denied.

## ARGUMENT

The defendant invokes not just 50 U.S.C. § 1806(c), which the Court already expressly addressed in its memorandum decision, but also 18 U.S.C. § 3504(a)(1), Fed. R. Crim. P. 16, and due process in his Motion to Compel the government to provide notice regarding the existence – or not – of Section 702 surveillance. None of his claims have any merit.

I. There is No Reason for this Court to Re-Visit its Ruling That Notice Is Not Required Under 50 U.S.C. § 1806(c).

This Court specifically held that the government is not required to provide notice of Section 702 surveillance pursuant to 50 U.S.C. § 1806(c). In the Motion to Compel, the defendant asks this Court to reach the opposite conclusion. ECF 146 at 17-23. The defendant has not identified any reason why this issue should be re-litigated or re-considered by the Court. His request should be denied.

II. The Government is Not Required to Affirm or Deny the Existence of Section 702 Surveillance Pursuant to 18 U.S.C. § 3504.

The defendant claims that the government must affirm or deny its use of surveillance pursuant to 18 U.S.C. § 3504(a)(1). ECF 146, at 8-12. That statute, however, is not applicable in the context of Section 702 surveillance. Even if it were applicable, the defendant's allegations are insufficient to trigger any obligation by the government to respond to his demand for notice.

Section 3504(a) provides, in relevant part, that "[i]n any trial, hearing, or other proceeding in or before any court ... [u]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act." The term "unlawful act" in this context means, essentially, electronic surveillance or wiretapping conducted without lawful authorization. 18 U.S.C. § 3504(b).

Section 3504(a) was enacted to provide a remedy for a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Wiretap Act). As the Second Circuit explained in *Cruz v. Alexander*, 669 F.2d 872 (2d Cir. 1982):

> After enacting Title III, Congress recognized that victims of illegal wiretapping may have grounds to suspect, but will have difficulty proving, that wiretapping has occurred. Congress therefore provided that upon a claim by a "party aggrieved" that wiretap evidence is being offered against him, the "opponent" of the claim must "affirm or deny" whether unlawful wiretapping occurred.

*Id.* at 874-75. The defendant has cited no authority in support of his assertion that in addition to 50 U.S.C. §1806(c), the government has a separate and additional notice obligation under 18 U.S.C. § 3504 to affirm or deny the existence of Section 702 surveillance in the connection with a criminal prosecution. He also has provided no authority to support his assertion that disclosure of Section 702 information must be provided outside of FISA's statutory scheme.[1]

---

[1] The Fourth Circuit has held that in the context of a grand jury investigation, Section 3504 does not apply to FISA surveillance. *In re Grand Jury Subpoena (T-112),* 597 F.3d 189, 201 (4th Cir. 2010).

4

Moreover, the defendant's position is contrary to the well-settled principle of statutory construction that a specific statutory provision normally controls over one of more general application. *Bloate v. United States,* 559 U.S. 196, 207 (2010); *Gozlon-Peretz v.United States,* 498 U.S. 395, 407 (1991).  "[C]onflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute." *Acosta v. Gonzales,* 439 F.3d 550, 555 (9th Cir. 2006) (citations omitted). *See also Bhd. of Maintenance of Way Emp. v. CSX Transp., Inc.,* 478 F.3d 814, 817 (7th Cir. 2007) ("[A] later enacted statute may limit the scope of an earlier statute"); *Food and Drug Admin. v. Brown & Williamson Tobacco Cmp.,* 529 U.S. 120, 143 (2000); *Nutrition Health Alliance v. Food and Drug Administration,* 318 F.3d 92, 102 (2d Cir. 2003).

18 U.S.C. § 3504 was adopted in 1970. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 702, 84 Stat. 922, 935-36 (1970). The notice provisions in 50 U.S.C. §§ 1806 and 1825 were enacted years later, in 1978 and in 1994, respectively. *See* Intelligence Authorization Act for Fiscal Year 1995, Pub. L. No. 103-359, § 807, 108 Stat. 3423, 3443 (1994). To construe 18 U.S.C. § 3504 as trumping FISA's later-enacted, more specific notice provisions, as the defendant argues, would not only fly in the face of the well-established rule of statutory construction, but would completely vitiate the carefully crafted notice provisions designed by Congress for the handling of  classified information in criminal cases under Section 702 and the Classified Information Procedures Act ("CIPA"), Title 18, U.S.C. App III.  As the Tenth Circuit expressly recognized in *United States v. Muhtorov*, 20 F.4.th 558, 631 (10th Cir. 2021), "the government's foreign intelligence surveillance methodology is classified, so affirming or denying the use of various surveillance techniques would necessarily divulge classified information."

The defendant also argues that commentary in Senate Report 95-701 proves that Congress intended for Section 3504 to apply to Section 702 surveillance. ECF 146, at 8.  Appealing to the

legislative history here is inappropriate, because the language of 50 U.S.C. §1806(c) is clear. "Legislative history is irrelevant to the interpretation of an unambiguous statute." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808, n. 3 (1989). "Unless exceptional circumstances dictate otherwise, 'when we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington Northern R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

Even assuming, for purposes of argument only, that § 3504(a)(1) does apply outside of the Title III wiretap context to classified information, the law is clear that the defendant must make a showing of an *unlawful* act before the government would be required to respond to any such request. "Although the claim need not be particularized," allegations of misconduct based upon "mere suspicion" or that lack "a colorable basis" are insufficient to trigger the government's disclosure obligation. *United States v. Yanagita*, 552 F.2d 940, 943 (2d Cir. 1977). *See also United States v. James*, 609 F.2d 36, 51 (2d Cir. 1979). The defendant has made no such showing here.

The substance of the defendant's claim that there was Section 702 surveillance of his communications consists of nothing more than pure speculation and half-baked reasoning. Advancing the very same argument that he did in his first Motion to Compel, the defendant says that the publication of an article in *Politico* on February 13, 2023, and public statements by FBI Director Wray about an unidentified foiled terror plot that was prevented as a result of § 702 surveillance contained "details about the surveillance, all of which are present" in this case. ECF 146, at 5. He then alleges that "[b]ased on defense counsel's review of public federal criminal dockets and Department of Justice press releases since January 2023, this is the only prosecution that tracks each and every detail in the FBI's disclosures," *id.,* and therefore, the FBI Director was referring to this case in his remarks and that he is an "aggrieved person" within the meaning of Section 3504(a)(1). This reasoning is fatally flawed.

First, the "details" upon which the defendant relies to support his claim that he is an aggrieved person are nothing more than generalized, non-specific references to a terrorist plot against U.S. critical infrastructure that was "foiled in 2023." As defense counsel even conceded at the motions hearing, there are countless investigations conducted by the federal government that are not disclosed in public pronouncements or in charges filed on a public federal docket. Exhibit 1, at 58-59. The mere fact that the defense did not find any other federally charged, public case involving a potential attack on U.S. infrastructure in the relevant time period, therefore, means absolutely nothing.

The defendant also fails to identify any colorable basis upon which to believe that there was an unlawful act for purposes of triggering the government's obligation under Section 3504. The sum total of the defendant's argument on this point appears to be that *if* there was Section 702 surveillance that captured his communications, that surveillance was *necessarily* unlawful. The defendant is wrong. Courts have repeatedly recognized that the incidental collection of the communications of non-targeted U.S. persons under Section 702 is lawful and that such communications can be retained and used in criminal proceedings. *See, e.g., United States v. Hasbajrami,* 945 F.3d 641, 646 (2d Cir. 2019); *United States v. McKinnon*, 721 F.2d 19, 22-23 (1st Cir. 1983).

Just like the defendant in *United States v. Muhtorov*, 20 F.4th 588, the defendant here "has not distinguished between lawful and allegedly unlawful surveillance methods. He has not alleged unlawful acts with any 'specificity,' nor has he marshaled any *persuasive* evidence 'in support of the allegations' of unlawfulness." *Id.* at 631 (emphasis added). His conclusory allegations are insufficient to trigger any obligation on the part of the government to "affirm or deny" the existence of such surveillance pursuant to Section 3504(a)(1), even assuming the statute is applicable in the first place.

III.     The Defendant's Due Process Rights Have Not Been Violated.

Completely ignoring the fact that this Court has already found "that there is no basis on which to

believe or suspect that the rights of Defendant have been violated in any way with respect to any government activities authorized by FISA," ECF 143, at 3, the defendant claims that due process "independently" requires the government to provide him with notice of Section 702 surveillance and disclosure of the content of any intercepted communications. ECF 146, at 12. The Court has already decided this issue, following an *ex parte* process to which the defendant expressly consented. For that reason alone, the defendant's argument should be rejected. But, even if the Court were to entertain the defendant's due process argument, the argument is meritless.

The only authority that the defendant cites in support of his claim that he is entitled to notice and discovery of Section 702 surveillance as a matter of "due process" is *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982). The defendant claims that in that case, the D.C. Circuit held that in a circumstance where the government does not intend to offer evidence obtained or derived from FISA surveillance, a defendant "may still pursue an '[a]lternative[]' path to litigate FISA surveillance as a "matter of due process." ECF 146, at 12. When properly read in the context of the particular facts of that case, however, it is readily apparent that the *Belfield* decision actually dictates *against* disclosure, as matter of due process or otherwise.

In *Belfield*, the government advised the defendants that there *was* incidental FISA surveillance of their communciations. The district court conducted an *ex parte, in camera* review of the government' logs of the surveillance and determined that the surveillance had been lawful. On appeal, the defendants challenged that procedure, claiming that they should have been permitted to review the logs themselves and that the district court should have held an adversary hearing so that they could "participate in the determination of [the] legality" of the surveillance as a matter of due process. *Id.* at 144. The D.C. Circuit Court rejected that claim, holding that the *ex parte in camera* review was appropriate and did not violate the defendants' rights. *Id*. at 147-48. "A claim that disclosure and an adversary hearing are

constitutionally required goes directly contrary to all pre-FISA precedent on point. In this circuit and in others, it has constantly been held that the legality of electronic, foreign intelligence surveillance may, even should, be determined on an *in camera, ex parte* basis." *Id.* at 149.

To the extent that the defendant relies upon *United States v. Alderman*, 394 U.S. 165 (1969), which he notes was cited in the *Belfield* opinion, that case is easily distinguishable and not pertinent here. For one thing, *Alderman* was decided prior to the enactment of Section 702 and its specific notice provisions.[2] Moreover, the facts in *Alderman* differ significantly from those presented here, including (1) an acknowledged violation of constitutional rights; (2) multiple defendants whose separate rights could not be adequately protected by *in camera* review; and (3) a concession by the government that the surveillance was illegal and that the fruits of the surveillance were arguably relevant in determining the defendants' guilt. *Id.* Because the parties *agreed* that there had been unlawful surveillance, the issue before the Supreme Court was limited to the question of "whether disclosure was necessary so the parties could litigate the scope of the exclusionary rule." *Muhtorov*, 20 4.th at 631. None of those factors are present here.

As for the defendant's claim that he is also entitled, as matter of due process and under the Fourth Amendment, to specific notice as to how the government obtained each of his communications, ECF 146, at 16-17, that claim likewise should be rejected. The defendant cites no authority for his position, and indeed, multiple courts have rejected similar claims. *Id*. at 630 ("Neither the Supreme Court nor this court

---

[2] For the same reason, the defendant's reliance on *Alderman* and other cases decided prior to the enactment of Section 702 to support his argument that the Court has the authority to order the government to issue notice of Section 702 surveillance is misplaced. ECF 146, at 25. The Court's authority to order such disclosure is governed by the notice provisions set forth in Section 702 itself. *United States v. Moalin*, 973 F.3d 977, 1000 (9th Cir. 2020)([T]he need for secrecy inherent in foreign intelligence investigations justifies a more circumscribed notice requirement than in the ordinary criminal context … the FISA and FAA notice provisions are more limited, *requiring notice only*" when the elements and circumstances set forth in 50 U.S.C. § § 1806(c), 1825(d), 1845(c) or 1881e(a)(1) are present)(emphasis added).

has recognized a due process right to notice of specific techniques the government used to surveil the defendant in a foreign intelligence investigation, nor to evidence collected when the evidence is not grounded in a specific due process right, such as *Brady*").

 IV. <u>Fed. R. Crim. P. 16 Does Not Support the Defendant's Demand for Notice.</u>

The defendant also argues that the government must provide him with notice of the alleged use of Section 702 surveillance pursuant to Fed. R. Crim. P. Rule 16, because such notice "is germane to his ability to file an informed motion to suppress." ECF 146, at 32. Like his other "notice" arguments, this assertion is baseless.

Rule 16(a)(1)(B) requires the government to disclose the "written or recorded statement[s]" of the defendant that are relevant. Nothing in the rule requires the government to make disclosures to a defendant about what investigative tools it may or may not have used in investigating its case. As already indicated in its response to the defendant's first Motion to Compel, the government has fully complied with Rule 16(a)(1)(B) by providing to the defendant in the course of discovery the relevant written and recorded statements made by him. ECF 110, at 2.

Russell's additional claim that he is entitled to the substance of any alleged Section 702 surveillance pursuant to Rule 16(a)(1)(e) likewise misses the mark. That rule states, in pertinent part, that the government must permit the defendant to inspect and copy documents or other items if they are" within the government's possession, custody, or control" and are either "material to preparing the defense" or were "obtained from or belong[] to the defendant." F. R. Crim.P. 16(a)(1)(e). Plainly, information regarding the means used to investigate the defendant does not "belong" to the defendant. As already established above, the defendant has not identified a colorable basis to support his speculation about the existence of Section 702 surveillance nor does he even attempt to assert that such surveillance was "obtained from" him within the meaning of Rule 16.

Finally, the defendant has not made an adequate showing that the government is in possession of any item that is "material to preparing the defense." To establish materiality, a defendant must identify *facts* which would tend to show that the government is in possession of information helpful to the defense. The non-specific "details" in Director Wray's public remarks are insufficient to meet that standard and this Court has already found that "there is no basis on which to believe or suspect that the rights of Defendant have been violated *in any way* with respect to any government activities authorized by FISA." ECF 143, at 3(emphasis added). Accordingly, notice and disclosure of Section 702 surveillance is immaterial in this case.

V. The Defendant is Not Entitled to the Government's Classified *Ex Parte* Submission or the Classified Version of the Court's Memorandum Decision.

The defendant seems to have concluded that there was "*ex parte* briefing of intertwined factual and legal issues" in connection with the *ex parte, in camera* process to which he had consented. ECF 146, at 35. He says he must have access to such materials in order to pursue the claims set forth in his Motion to Compel. *Id.* As already set forth above, there is no merit to any of the defendant's notice and disclosure demands, and therefore, he is not entitled to.the government's classified submission or the classified version of the Court's memorandum opinion.

The defendant also takes the position that because there has been no sealing motion related to the government's *ex parte* submission, the government "has not adequately justified its effort to keep them permanently from the defense." *Id*. This position is rather astonishing. The defendant not only understood, but agreed to, the following procedures that the Court outlined from the bench:

1) the government would submit a classified written document to the Court in the courthouse SCIF answering the classified question as to whether or not there was Section 702 surveillance of the defendant's communications;

2) upon review of that written submission, the Court would determine if the question of

11

Section 702 surveillance was "even germane. And if I were to conclude it was not, I would need to be able to say in generalized language that the Court had conducted an *ex parte* review and concluded that the issue is not germane." Exhibit 1 at 70;

    3)    the process would "generate something here, though, that is classified and somehow then the record's going to have to reflect that … I think the procedure … would be that I would acknowledge the document, the document gets marked and the Government has the responsibility to preserve it for record purposes so that the Court of Appeals could very easily access it …in their own SCIF environment." *Id.*; and

    4)    government counsel would hand-deliver the written submission to the Court "marked in some appropriate way and you should have an order prepared, a draft order where the Court will order you to preserve that document in a classified setting so that it is readily available to the Court for reviewing courts, et cetera. It has to be preserved. …. The Government as the Court's agent is going to hold onto it … in an appropriate setting." *Id.* at 72.

At no point during this discussion in open court did the defendant object to any part of the procedure outlined by the Court. He also did not object after the Court memorialized those agreed procedures in its Memorandum Opinion. ECF 134, at 9-11.  The defendant should not now be permitted to reverse course, object to the procedures that the government and the Court dutifully followed, and obtain access to the classified written submission by claiming that the submission was not subject to a proper motion to seal and that the process somehow violated his "due process and fair trial rights." ECF 146, at 35.[3]

---

[3]  As noted earlier, the defendant did reserve the right to file a later Motion to Suppress on constitutional and various other grounds. That reservation is a far cry from the notice and disclosure demands that the defendant makes in his Motion to Compel.

## **CONCLUSION**

The defendant has raised a host of arguments, none of which are viable, in an effort to force the government to disclose information that it is not required to disclose and is classified. The defendant's demand that he receive notice and disclosure of Section 702 surveillance that the government may or may not have used is not supported by any statute, case law, considerations of due process or the rules pertaining to discovery. Th government has complied with its discovery obligations under Rule 16 and *Brady*. It has complied with its obligations under 50 U.S.C. §§ 1806(c). This Court has found, after reviewing information in a classified and *ex parte* setting, conducted with defendant's express consent, that no notice is required and that none of the defendant's rights have been violated.

For these reasons, the government respectfully requests that this Court deny the defendant's Motion to Compel.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:

Kathleen O. Gavin
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

*FILED VIA ECF/CM*