UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SARAH CLENDANIEL | Case No. JKB-23-056<br><br>**Under Seal** |

**DEFENSE SENTENCING MEMORANDUM**

1

**EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Dr. Scott Bender Report and C.V. |
| B | Dr. Katherine Porterfield Report and C.V. |
| C | ███████████ (Mother) Letter |
| D | ███████ (Sister) Letter |
| E | Sarah Clendaniel Letter |
| | |
| | |

**ARGUMENT**

As the Court is aware, 18 U.S.C. § 3553(a) mandates that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing laid out in § 3553(a)(2). The statute requires the Court consider a number of factors "in determining the sentence to be imposed." The information below addresses the statutory sentencing factors. The sentence that is sufficient is 10 years' incarceration followed by a significant term of supervised release to provide continued rehabilitation services.[1]

**I.    The Sentencing Guidelines**

As outlined in the plea agreement, the Defense reserved objections to the loss calculation under U.S.S.G. § 2B1.1(b)(1) for Count 1 (*see* Plea Agreement, ¶ 6.b.), and the base offense level for Count 2 under U.S.S.G. § 2K2.1(a)(2) (*see id*., "Felon in Possession of a Firearm," at p. 6).

Although this counsel is skeptical that Ms. Clendaniel would have ultimately followed through on accomplishing the plans to damage any energy facility transformer, the Defense acknowledges that was the stated goal, as discussed at length in communications. Furthermore, the Government has a low preponderance evidentiary standard for demonstrating the intended loss. The Defense therefore does not dispute the findings contained in the Government's reports attached to their memorandum as Exhibits 2 (Report of Denver Gallardy) and 3 (BGE Damage Assessment report). The Defense acknowledges that the loss calculation for Count 1 drives the guidelines calculation.

---

[1] The Presentence Report states that the maximum term of supervised release for Count 1 is 3 years (¶ 123, p. 31). Under 18 U.S.C. § 3583(j), the authorized term of supervision is any term of years or life because Count 1 is a terrorism predicate. The parties' plea agreement correctly states the maximum supervision term of life.

Due to the anticipated loss calculation under § 2B1.1(b)(1) for Count 1, other Defense objections to the guidelines calculations will be rendered moot. *See* Dkt. 137, Presentence Report, pp. 28-29 (noting Defense objections).

The Defense maintains that a downward variance from the guidelines to a sentence of 10 years' incarceration followed by a significant term of supervised release is appropriate under the 3553(a) factors.

## II.     3553(a) Factors.

### A. Sarah Clendaniel's Personal History[2] and the Nature and Circumstances of the Offense

The circumstances of Sarah Clendaniel's youth profoundly shaped her beliefs, development, and self-worth. In the birth lottery, Sarah was unfortunate. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

Two expert reports attached to the Defense's memorandum provide the details of Sarah's history and the respective clinical findings. Attached as Exhibit A, Dr. Scott Bender, a board-certified clinical neuropsychologist, provided a neuropsychological evaluation report. Attached as Exhibit B, Dr. Katherine Porterfield, a clinical psychologist, provided a psychological evaluation report. These expert reports are based on review of voluminous records and hours of interviewing Sarah. These reports are important considerations for the Court's sentencing determination.

Due to the detailed nature of the clinical reports and the Presentence Report ("PSR"), and the ████████████████████████████████████████████████, the Defense will not

---

[2] Ms. Clendaniel's history is compiled from family interviews, interviews of Ms. Clendaniel, review of available records, and the included expert reports.

duplicate Sarah's full life history here. The Defense instead provides a condensed overview of her history to contextualize the offense conduct.

1. *Childhood:* ██████████████████████████

Sarah was born into an ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

As discussed in the attached expert reports, ████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████ ██████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[3] Sarah's mother wrote a letter to the Court for sentencing. *See* Exhibit C. In the letter's third paragraph, her mother discusses the ████████████ and Sarah's early incidents of ████
████.

███████████████████████████████████████████

███████████████████████████████████████

█████, she was eventually returned to the same ████████ environment. When her father died in a car accident when Sarah was 10 years old, ██████

████████████████████████████████████

████████████████████████████████████

After Mr. Clendaniel's death, ███████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████

2. ████████████████████████████ *as she becomes an addict*█

With no protection from others in her life, Sarah repeatedly found herself in dangerous situations ████████████████████████████████. She ran away from home at

---

█████████████████████████████████████████████████████████████████████████████

6

age 12 and went to the home of a family acquittance, a ███████████ ███████████████. She began using drugs regularly to numb herself.

Sarah's drug use became addiction and ████████  ████████████████████████████████ ████████████████████████████████ ████████████████ As a teen, the years of turmoil overwhelmed her. Her behavior was a clear reflection of her inner unrest. She further abused drugs as a maladaptive coping means and started committing crimes to get drug money – thefts and eventually convenience store robberies.

Her teen years brought ██████████████████████ ████████████████████████████████████.[5] ████████ ██████████████████████████████████████████, she would return soon to the same ████████ environment.

3. *Sarah's relationships with unhealthy partners persisted in adulthood, culminating with the damaging influence of Brandon Russell.*

In Sarah's early adult years, she continued to feel worthless. She ████ ████████████████ never had a positive, protective relationship. At 18, while incarcerated following drug addiction crimes,[6] ████████████████████ ████████████████████████████████████████████████████████.

---

[5] Sarah's sister ██████ wrote a letter for sentencing, attached as Exhibit D. The letter describes Sarah's ████████████ and struggles with mental health and substance abuse.

[6] As noted in ¶ 62 of the PSR, a convenience store clerk robbery victim stated that Ms. Clendaniel had a heroin addiction.

7

Upon release, ███████████████████████████████████████████████████████████████████████████████████████████████████████████. She ██████████ and returned to Maryland in 2015.


*Sarah with two of her children*

Drugs were Sarah's escape from the life she was living but did not want. Still hooked on drugs in Maryland, she committed a series of store robberies with various men to get money for drugs, several times robbing the same convenience store ██ ██████████████████ ██████████████████████████████████████ While serving her sentence on these offenses, she struggled with fractured mental health and ████████████████. During this incarceration, in 2018, she and Brandon Russell began writing each other. Sarah's attraction to him reflects a suffering sense of self. She has always deserved better than the men in her life.

4. *Sarah's offense planning is a vile manifestation of her anguished desire to feel seen, have agency, and belong.*

When Sarah was released in 2020, she drifted through several halfway house programs. She gained placement in a residential program that permitted her ████████ to reside with her. She gained sobriety while attending drug treatment and upon discharge from the program in February 2022, she again moved ████████████████.

Her sobriety did not last. As she became overwhelmed trying to obtain basic identification documents and apply for Social Security benefits due to her mental health disorders, her anxiety and sense of worthlessness overwhelmed her. She lacked basic means

8

to function in society. Sarah again returned to drugs as her coping mechanism and spiraled downward. With compromised rationality and frayed mental health, she contemplated suicide. In October 2022, she attended a medical appointment and walked away with the belief that she had ███████████████ .

After a life of misery, amidst this convergence of feeling hopeless, lost, invisible, and worthless, Sarah sought meaning and control in toxic beliefs and planning of destruction. She channeled years of abuse outwards into communication outlets spewing caustic, extremist outpourings of hate and disorder. Amidst rants and planning, Sarah felt for the first time that she was in the driver's seat of her life. Her communications with Brandon Russell and CHS-1 demonstrate just how empty and lonely her life was. Dr. Scott Bender explains in his report the interplay between Sarah's trauma history, substance abuse, and offense conduct:



Exhibit A, Dr. Bender Report at 14.

In her communications discussing the plot over two months, Sarah talks a big tactical game. Yet, she also admits that she only recently acquired her driver's license and still needed practice driving. She talks about the epic nature of the event, yet is reliant on CHS-1 to provide the needed firearm because she has been unable to procure it herself. Sarah discusses the importance of scoping out the target energy stations, yet never actually visited them. She presents herself as an executionary force, yet struggled to navigate bureaucracy to obtain identification documents and social benefits. Indeed, her co-defendant connected Sarah and CHS-1 because she could not have done the offense alone.

The views Sarah subscribes to are deplorable, sown from ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. But in this counsel's opinion, it is highly questionable that Sarah Clendaniel would have put her words into full action. Her words are her weapon against the world, but anyone who spends hours with Sarah in person knows she is a wounded bird who is deeply frightened of the world with crippling self-doubt.

5. *Sarah possesses disturbing beliefs but her innate goodness is not destroyed.*

Extremist cults prey on vulnerable, disenfranchised, broken people – people who feel neglected and betrayed by society. They prey on anger and distrust to spread disinformation and conspiracy theories and sow disruption and discord. They provide a warped sense of meaning and belonging.[7]

Sarah has held extremist views for a long time. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, and her experiences in the world only exacerbated the cynicism. Repeatedly, she has engaged with men who are manipulative

---

[7] *See* Cynthia Miller-Idriss, *Hate in the Homeland*: *The New Global Far Right*, Princeton University Press, 3, 55 (2020).


*Sarah with her sister Rachel*

. But Sarah is not so lost that she is beyond help, rehabilitation, and redemption. She can be reasoned with and self-reflect, though she has lacked positive peers for healthy socialization – surrounded instead with negative influences. Though the better parts of her nature may at times be buried beneath the scar tissue of trauma, they are not destroyed. Sarah's true essence is good, even if her genuine goodness is at times masked or blurred by destructive, disturbing beliefs systems. In many ways, Sarah is still fragile like a child. Her prevailing need is not martyrdom or ascending in the hollow ranks of extremist salutes. Her greatest needs are simply to be loved and love herself. She is achingly starved for validation of her self-worth.

### B. A Sentence of Ten Years Reflects the Seriousness of the Offenses, Promotes Respect for the Law, Provides Just punishment, and Deterrence.

A sentence of 10 years reflects the serious nature of planning such a destructive offense but also acknowledges that the offense was not executed. A decade sentence also reflects Sarah's complex background, particularly a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The requested sentence does not allow Sarah's trauma to neutralize her offense but recognizes the undeniable role that profound trauma has played in making her vulnerable to extremism.

Although Sarah has held her extremist views for a long time and may have attempted notoriety, she never before sought to execute an offense as a homage to her beliefs, nor is she a founder or leader in an extremist organization. Her prior offenses are all confined to

11

drug addiction behavior with a male abettor, not extremist plots. Her history is that of someone who is far more likely to physically harm herself than others.

Sarah accepted responsibility for her offense with an extensive factual stipulation knowing that the Court may impose many years of punishment. The aggregate sentence for her offenses may be staggering due to the significant consecutive time she faces in Cecil County on the violation of probation cases. The Court has the authority to order lifetime supervision. Her guilty plea is a full submission to the authority of the legal system to exercise judgment and punishment for her offense.

Despite the uncertainty of her sentences, Sarah has chosen not to exercise her trial rights. If she wanted to peddle extremist viewpoints in open court, opting for a jury trial would provide her with a platform to gain attention and publicize toxic beliefs. Sarah does not desire this. Instead, she wishes to receive her punishment and move on with her life. Far from the brash communications underlying the offense, Sarah is deeply terrified of her sentencing day. In contrast to her talk of disorder, Sarah has submitted to legal order through her plea and sentencing.

The matter of deterrence is complicated in the context of extremism. The general public has no desire to disrupt societal order with the cascading failure of power grids. The target audience for a deterrent message is therefore extremists seeking societal disruption and destruction. Incarceration is unlikely to stamp out extremist views. Those intent on causing destructive chaos are perhaps operating beyond the realm of deterrability since they already operate beyond societal norms. For others, the prospect of being caught instills sufficient fear to chill acting on extremist beliefs. That fear is substantiated through law enforcement detection and disruption of extremist plotting. The Government therefore has sent a strong

deterrent message through its prosecution of Sarah Clendaniel who was arrested for planning an attack. A sentence of ten years is sufficient to deter those who are deterrable.

### C. Sarah's greatest need is for trauma-informed treatment

Purged of toxic drugs and poised to tackle the hard work of intensive treatment, Sarah desires more for herself than her past, as evident in her letter to the Court and the attached expert reports.

Her history is replete with drug use to numb the pain of ███████████████ ███████████████████████████████████████ Progress Sarah made in longer treatment programs was undone with returns to her old environments ███████████ Problematically, prior treatment did not sufficiently address the depth of her complex traumas, challenge her viewpoints, nor equip her with appropriate coping mechanisms to move forward. Sarah's amenability to sitting through hours of interviews and self-reflection with psychologists in relation to this case, as demonstrated in the expert reports attached, is promising evidence of her ability and desire to work through treatment to address the roots of her problems.

Importantly, Sarah has empathy and morals. There remains work to be done in challenging her beliefs and she is receptive to conversations seeking to explore and challenge them. Progress undoubtedly will take time and persistence. With patient inquiry and work, Sarah's beliefs that are noxious may be eventually dispelled.

Sarah's amenability to treatment for her complex post-traumatic stress disorder and substance use disorder, engagement with psychologists, desire to lead a productive life, combined with the facts that she has never before executed on her problematic beliefs, means she does not need to be incapacitated for decades. Her letter to the Court (Exhibit E) shows

that she recognizes the seriousness of her offense and has begun contemplating positive paths forward.

## CONCLUSION

The sentence that is sufficient but not greater than necessary under the § 3553(a) factors is ten years' imprisonment followed by a significant term of supervised release. The Defense requests a recommendation of presentence confinement credit from February 3, 2023, and a BOP facility recommendation that provides the following programming: substance abuse and mental health treatment, to include trauma-focused treatment, dialectical behavioral treatment, and medication management; vocational training; and college correspondence courses. The Defense agrees with the recommended conditions of supervision outlined in the PSR, with an emphasis on long-term treatment services.

Respectfully submitted,

/s/
Sedira Banan (#804827)
Assistant Federal Public Defender
Counsel for Sarah Clendaniel
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
sedira_banan@fd.org

Cc: Kathleen Gavin, AUSA; Michael Aubin, AUSA; Adam Smith, USPO